IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Bankruptcy No. 11-21606-CMB |
| | : | |
| Diana M. Urmann, | : | Chapter 7 |
| | : | |
| Debtor. | : | |
| | : | |
| | : | |
| James R. Walsh, Esquire, | : | |
| Trustee of the Bankruptcy Estate of | : | |
| Diana M. Urmann, | : | |
| | : | |
| Movant, | : | |
| | : | |
| vs. | : | |
| | : | |
| Diana M. Urmann, John C. Urmann | : | |
| and Reliance Steel & Aluminum Co. | : | |
| Master 401(k) Plan, | : | |
| | : | |
| Respondents. | : | |

*Appearances*:  Matthew M. Herron, Esq. for Debtor-Respondent
James R. Walsh, Esq., Trustee, for Movant

**MEMORANDUM OPINION**

The matter before the Court is the *Motion for Approval of Settlement of Equitable Distribution Claim Pursuant to Federal Rule of Bankruptcy Procedure 9019 and for Authority of Chapter 7 Trustee to Execute a Qualified Domestic Relations Order to Effectuate Settlement* ("Motion to Approve Settlement") filed by Movant, James R. Walsh, Esq., Trustee of the

Bankruptcy Estate of Diana M. Urmann.[1] For the reasons stated herein, the Motion to Approve Settlement shall be granted as set forth below.

## BACKGROUND

Debtor, Diana M. Urmann, filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code on March 18, 2011.  Prior to said filing, on June 17, 2010, Debtor's then-husband, John Charles Urmann ("Mr. Urmann") filed his *Complaint in Divorce* seeking dissolution of his marriage to Debtor.[2]  As part of the *Complaint in Divorce*, Mr. Urmann sought equitable distribution of the marital property.  At that time, said marital property included Mr. Urmann's Reliance Steel & Aluminum Co. Master 401(k) Plan ("Pension") worth approximately $106,224.26.  On January 21, 2011, Debtor filed her *Counterclaim to Complaint in Divorce* wherein Debtor asserted a claim for alimony, alimony pendente lite, and/or spousal support.

Despite the pending divorce proceedings, and claims asserted thereto, on Debtor's bankruptcy Schedule B, Debtor indicated that she did not have an interest in any annuities; IRA, ERISA, or other pension plans; alimony, maintenance, support and property settlements; contingent and unliquidated claims, and/or; any other kind of personal property not already divulged in her schedules. Accordingly, no exemptions were claimed for such property on Debtor's Schedule C.  Additionally, on Debtor's Statement of Financial Affairs, Debtor indicated

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334.  This is a core matter pursuant to 28 U.S.C. §157(b)(2)(A) and/or (O), and the Court will enter final judgment in this proceeding.  However, if the United States District Court determines pursuant to the rationale set forth in *Stern v. Marshall,* 131 S.Ct. 2594 (2011), that this Court does not have the authority to enter final judgment, then the Memorandum Opinion and Order entered shall constitute the Court's proposed findings of fact and conclusions of law and recommendation to the District Court.

[2] Due to inadequate service, Mr. Urmann reinstated the Complaint in Divorce on December 13, 2010 and served Debtor thereafter.

2

that she had no suits or administrative proceedings pending and/or was party to such in the year prior to filing.

Debtor's §341 Meeting of Creditors ("MOC") was held on April 18, 2011. Upon questioning by the Movant-Trustee at the MOC, Debtor disclosed her existing divorce proceedings and claims for equitable distribution and support. Following the MOC, Movant-Trustee indicated on the docket that this was an asset case. Subsequently, on April 25, 2011, Debtor filed Amended Schedules B and C, wherein Debtor amended Schedule B to include a one-third interest in a Colonial Penn Life Insurance Policy valued at $2,058.87, and exempted the same on Amended Schedule C, pursuant to 11 U.S.C. §522(d)(5); Debtor's amended schedules failed to include her equitable distribution and/or spousal support claim.

On November 4, 2013, Movant-Trustee filed his Motion to Approve Settlement seeking to settle the equitable distribution claim for $30,000.00.  Shortly thereafter, on November 18, 2013, over two and one-half years after the filing of Debtor's bankruptcy case, Debtor filed a second amendment to Schedules B and C listing, for the first time, Debtor's interest in the qualified retirement plan of Mr. Urmann valued at $60,000.00, as well as Debtor's interest in alimony, maintenance, and support from Mr. Urmann for an undetermined amount.

On November 21, 2013, Debtor filed *Debtor's Response in the Nature of an Objection to Trustee's Motion for Approval of Settlement* ("Debtor's Objection to Settlement") wherein Debtor argued that she did not possess a "claim" relative to her interest in the Pension, that said interest was not property of the bankruptcy estate under 11 U.S.C. §541(c)(2), and further, that if her interest was, in fact, property of the estate, it would be exemptable.  On December 13, 2013, the Movant-Trustee filed *Trustee's Objection to Debtor's Claimed Amended Exemptions* ("Objection to Amended Exemptions") averring that, as of the time of filing, Debtor did not have

3

an interest in the Pension but merely a claim for equitable distribution. Debtor filed a response to the Objection to Amended Exemptions on January 13, 2014. The Movant-Trustee filed a supplemental response to the Debtor's Objection to Settlement as well as the Objection to Amended Exemptions. An evidentiary hearing was held on January 21, 2014 on both the Motion to Approve Settlement and the Objection to Amended Exemptions. Specific to the Motion to Approve Settlement, Debtor argued that her interest in the Pension was excluded from property of the bankruptcy estate under 11 U.S.C. §541(c)(2) and, alternatively, even if said interest was property of the estate, that the Motion to Approve Settlement should not be approved as a greater recovery is possible and said settlement is prejudicial to Debtor.[3]

At the conclusion of the hearing, the parties were provided an opportunity to file briefs. Debtor filed her *Supplemental Brief of Defendant Diana M. Urmann* on March 3, 2014. Movant-Trustee filed his *Reply of Chapter 7 Trustee to Supplemental Brief of Defendant Diana M. Urmann* on March 4, 2014.

## DISCUSSION

Property of the Estate

The Court first analyzes whether Debtor's interest in the Pension is property of the estate. Pursuant to 11 U.S.C. §541(a)(1), "[t]he commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: . . . (1) [e]xcept as provided in subsections (b) and (c)(2) of this

---

[3] At the hearing, Debtor also argued that if Debtor's interest in the Pension is determined to be property of the bankruptcy estate, said interest is exemptable in full under 11 U.S.C. §§522(b)(3)(C), (d)(10)(E), and/or (d)(12) and/or, in part, pursuant to 11 U.S.C. §522(d)(5). As the Court will address the Debtor's exemption claims by separate order to be issued concurrently with the within Memorandum Opinion and Order, the Court need not analyze Debtor's exemption claims within.

4

section, all legal or equitable interests of the debtor in property as of the commencement of the case." Accordingly, property of the estate is determined as of the time of filing.

Prior to the date of Debtor's bankruptcy filing, Mr. Urmann filed his *Complaint in Divorce*, wherein Mr. Urmann requested equitable distribution of the marital assets. At the time of the bankruptcy case filing, the claim for equitable distribution remained unresolved. As such, at the time of filing, Debtor's assets included a claim for equitable distribution of marital property, including the Pension. See *In re Ruitenberg*, 13-2175, 2014 WL 959485 at *3 (3d Cir. Mar. 13, 2014); *Walsh v. Burgeson (In re Burgeson),* 504 B.R. 800 (Bankr.W.D.Pa.2014). Debtor avers that her interest in the Pension relative to her equitable distribution claim is excluded from property of the estate under 11 U.S.C. §541(c)(2) pursuant to the anti-alienation provisions of the Employee Retirement Income Security Act ("ERISA")[4]. Section 541(c)(2) creates an exception to the inclusive language regarding property of the estate of 11 U.S.C. §541(c)(1) as follows:

> **(c)(1)** Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law--
> **(A)** that restricts or conditions transfer of such interest by the debtor; or
> **(B)** that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.
> **(2)** A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C.A. § 541(c)(1)-(2).

---

[4] 29 U.S.C. §1001.

In a case strikingly similar to the within matter, the Court in *Walsh v. Burgeson (In re Burgeson),* 504 B.R. 800 (Bankr.W.D.Pa.2014), recently examined whether a debtor's interest in an estranged spouse's qualified pension plan is excluded from property of the estate under §541(c)(2). Said analysis is hereby adopted and incorporated within. The Court in *In re Burgeson* held that where a debtor possesses a claim for equitable distribution at the time of filing, but no Qualified Domestic Relations Order ("QDRO") or divorce decree delineating the debtor's ownership interest in the pension plan was obtained prior to the filing of the bankruptcy petition, and the debtor was neither a participant nor named beneficiary under the pension plan, the debtor had no beneficiary interest in the pension but instead, possessed an interest in a claim for equitable distribution. *In re Burgeson,* 504 B.R. at 805. As such, the debtor's interest in the pension could not be excluded from the estate pursuant to ERISA and the interest was property of the estate. *Id.*

In the within matter, it is undisputed, and this Court finds, that at the time of filing, Debtor had not obtained a QDRO or similar order granting Debtor an ownership interest in the Pension. Likewise, Debtor has failed to present any evidence demonstrating that Debtor was a participant or named beneficiary of the Pension as described in *Burgeson.* Consequently, this Court finds that Debtor did not have a beneficiary interest in the Pension at the time of filing and that any interest Debtor did possess in the Pension, through her equitable distribution claim, is property of the estate.

Settlement

In addition to her argument that her interest in the Pension is not property of the estate, Debtor avers that the Court should deny the Motion to Approve Settlement as it seeks to settle

the Debtor's equitable distribution claim for $30,000.00, half of the amount to which Debtor believes she is entitled.

Settlements are generally favored in bankruptcy cases as they minimize litigation and expedite the administration of a bankruptcy estate. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996)(citation omitted). "[P]ursuant to Bankruptcy Rule 9019(a), the authority to approve a compromise settlement is within the sound discretion of the bankruptcy court. Under Rule 9019(a), the bankruptcy court has a duty to make an informed, independent judgment that the compromise is fair and equitable. To be informed, the bankruptcy court 'must be apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate.'" *Crawford v. Zambrano (In re Zambrano Corp.)*, BR 09-20453-JAD, 2014 WL 585305 at *3 (Bankr.W.D.Pa. Feb. 13, 2014)(citations omitted); See also *In re Key3Media Grp., Inc.,* 336 B.R. 87, 92–93 (Bankr.D.Del.2005). However, "'it is not necessary for a bankruptcy court to conclusively determine claims subject to a compromise, nor must the court have all of the information necessary to resolve the factual dispute. . .'" *In re Key3Media Grp., Inc.*, 336 B.R. at 92 (citation omitted). Moreover, approval of a settlement does not require that the court be convinced that the settlement is the best possible compromise; it is only required that the settlement falls within a reasonable range of litigation possibilities. *In re Key3Media Grp., Inc.*, 336 B.R. at 93. The proponent of the settlement bears the burden of persuasion that the settlement falls within the range of reasonableness. *Id.*

In *In re Martin*, supra., the Third Circuit observed that the process of evaluating a proposed settlement for approval "requires a bankruptcy judge to assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *In re Martin*, 91 F.3d at 393. In order to strike this balance, the *Martin*

7

court set forth four factors for consideration: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. *Id.*

    a. Findings of Fact and Application of the *Martin* Factors

Applying the *Martin* test, the first factor to consider is the probability of success in the outstanding litigation of the claim for equitable distribution of marital property. At the outset of this analysis, the Court notes that the Movant-Trustee does not argue that if he were to proceed to trial on the equitable distribution claim, that he would not be successful in receiving an award of equitable distribution at all; here, the "inherent uncertainty of litigation" averred by Movant-Trustee is with respect to the amount that would be awarded.

Debtor contests the granting of the Motion to Approve Settlement largely on Debtor's belief that there is potential for a larger recovery pursuant to the equitable distribution claim. Specifically, the Court notes that throughout the within litigation, Debtor has averred that she is entitled to approximately $60,000.00. Thus, the question is not whether the Movant-Trustee would succeed in litigation, but whether the Movant-Trustee would be successful in recovery of the full amount of the equitable distribution claim as averred by Debtor.

At the hearing, a letter from Debtor's divorce counsel, Stephanie Jones McFadden, Esq., to Mr. Urmann's divorce counsel, Raymond W. Bitar, Esq., dated August 19, 2011 ("August 19, 2011 Letter") was entered into evidence wherein Debtor proposes resolution of the equitable distribution claim by equally dividing the value of the Pension and the marital debt. Under this proposal, Mr. Urmann would pay to Debtor one-half of the value of the Pension, plus one-half of

8

the value of the outstanding marital credit card debt, resulting in a total payment by Mr. Urmann to Debtor of $62,112.13. As no other explanation has been provided, the Court believes this calculation to be the basis of Debtor's averment that her equitable distribution claim is worth approximately $60,000.00, an amount greater than the value of one-half of the Pension, $53,112.13. The Court notes, however, that as of the date of the hearing, both Mr. Urmann and Debtor have received a discharge of debt in bankruptcy and, as a result, the credit card reimbursement appears to no longer be a factor in the equitable distribution claim. Thus, as the sole remaining asset for division is the Pension worth $106,224.26 at the time of separation, the Court finds that it is unlikely that the Movant-Trustee would be successful in obtaining an award of equitable distribution of $60,000.00. Further, the Court finds that success in receiving an equitable distribution award equal to one-half the value of the Pension is tentative.

Attorney McFadden testified at the hearing that in adjudicating a claim for equitable distribution, division of the assets is not necessarily equal and that other considerations, such as the parties' respective contributions relative to income and contributions to the household factor into the ultimate resolution of such a claim. Accordingly, whether Movant-Trustee would be successful in receiving one-half of the value of the Pension at trial would be within the full discretion of the court hearing the claim and subject to said court's determination of weight of each parties' respective contributions. As such, the Court finds that the uncertainty of litigation as to the amount to be awarded weighs in favor of approving the settlement.

Closely related to the first prong, the third factor of *Martin* requires the Court to examine the complexity of litigation involved, and the expense, inconvenience, and delay necessarily attending it. "It is axiomatic that settlement will almost always reduce the complexity and inconvenience of litigation . . . The balancing of the complexity and delay of litigation with the

benefits of settlement is related to the likelihood of success in that litigation." *Will v. Northwestern University et al. (In re Nutraquest, Inc.)*, 434 F.3d 639, 646 (3d Cir. 2006).

Bearing this standard in mind, the Court finds that Kevin J. Petak, Esq., counsel for Movant-Trustee, credibly testified that the costs of litigation would exceed any additional benefit that would be gained from further litigation. In Attorney Petak's negotiations with Mr. Urmann, Attorney Petak initially made a demand for $53,000.00, roughly one-half of the value of the Pension at the time of separation. Mr. Urmann countered with an offer of $20,000.00. Attorney Petak then offered to settle for $30,000.00. Attorney Petak testified that, in order to proceed in litigation, the bankruptcy estate would likely need to hire an expert witness. This cost, coupled with other litigation costs such as attorney's fees, would amount to approximately $20,000.00 to $25,000.00, effectively negating any anticipated additional recovery the Movant-Trustee would receive even if awarded the full one-half value of the Pension. Thus, this Court finds that the inconvenience of litigation, including the additional cost and delay, would ultimately net no additional benefit.

Debtor disputes Movant-Trustee's assertions, relying on Debtor's divorce counsel, Attorney McFadden's testimony at the hearing that resolution of the equitable distribution claim would cost approximately $2,000.00. Further, Debtor criticizes Movant-Trustee for not hiring specialized divorce counsel, such as Attorney McFadden, to settle the equitable distribution claim.

After having the benefit of observing Attorney McFadden at the evidentiary hearing, this Court finds that based on Attorney McFadden's apparent unfamiliarity with the proposed settlement, as well as her lack of involvement in the negotiations from which the settlement was produced, little weight can be attributed to Attorney McFadden's estimation of cost of $2,000.00.

Further, even if Attorney McFadden's estimation was reliable, per the credible testimony of Attorney Petak, the estate is without funds to retain Attorney McFadden, or any other attorney as divorce counsel. Thus, the Court finds Debtor's arguments unpersuasive and that the third factor of *Martin* supports approval of the within motion.

The second factor of *Martin* requires that the Court examine the likely difficulties in collection if the proposed settlement was approved versus if it was not. As part of the proposed settlement, Movant-Trustee seeks to have the proceeds of the settlement paid directly to him pursuant to a QDRO.[5] The Court notes that with the QDRO in place, the plan administrator of the Pension would make a distribution directly to Movant-Trustee upon the liquidation date, estimated at trial to occur in roughly six years, whereas absent the QDRO the Movant-Trustee would be dependent on Mr. Urmann's voluntary turnover of the settlement proceeds received by Mr. Urmann via distributions and/or withdrawals from the Pension upon reaching a certain age. The Court recognizes that direct payment from Mr. Urmann's plan administrator minimizes the risk of Mr. Urmann's failure to cooperate in the future and/or the necessity of litigation to compel payment(s) to the Movant-Trustee. Moreover, in the event that the equitable distribution claim is paid to the Debtor, the Movant-Trustee would similarly be forced to rely on Debtor's voluntary turnover of the equitable distribution claim's proceeds. As Debtor has been wholly uncooperative with the Movant-Trustee, as well as his counsel, since Debtor's divulgence of the existing equitable distribution claim at the MOC, the Court finds that the Movant-Trustee would have a greater chance of collection of the estate assets with a QDRO directly payable to Movant-Trustee in place as contemplated by the proposed settlement.

Finally, with respect to the best interests of creditors provision of *Martin*, Attorney Petak credibly testified that he believed that the settlement would be in the best interest of creditors as

---

[5] See Paragraph 6, "Form of Payment" of the QDRO attached to the Motion to Approve Settlement as Exhibit "B".

11

it provided for, at that time, a one-hundred percent payment of claims against the estate and administrative claims in addition to allowing for Debtor's §522(d)(5) exemption. Additionally, payment in a single lump sum, as contemplated by the QDRO, as opposed to monthly distributions from the Pension, would allow for payment of the claims against the estate in the full amount to be disbursed pursuant to said claims, immediately upon receipt of the funds. This is especially beneficial considering that division of the Pension pursuant to a QDRO would not occur for several years until Mr. Urmann reaches the appropriate age to withdraw funds from the Pension and thus, any disbursement of Pension funds to creditors will already be delayed for several years. Debtor presented no evidence to challenge Movant-Trustee's assertions that the settlement would be in the best interest of creditors.[6]

In addition to the evidence discussed above, the Court notes that the Debtor presented no credible testimony to rebut the Movant-Trustee's assertions that proposed settlement is reasonable. Based on the foregoing, the Court finds that all four *Martin* factors weigh in favor of the Motion to Approve Settlement and that the Movant-Trustee has met his burden of persuasion of showing that the settlement is reasonable under the circumstances.[7]

### b. Findings of Fact and the Fair and Equitable Analysis

In addition to evaluating the proposed settlement under the *Martin* factors, before approving the Motion to Approve Settlement, the Court must consider whether the settlement is

---

[6] Debtor argues that the settlement is not in her best interest and should therefore be denied. The Court notes, however, that the standard under *Martin* requires an evaluation of the best interests of the creditors, not the debtor. As Debtor failed to even allege that the best interests of the creditors would not be served pursuant to the proposed settlement, let alone provide evidence demonstrating such, the Debtor failed to overcome Movant-Trustee's showing that the settlement is in the best interest of the creditors as contemplated by *Martin.*

[7] Further, the Court finds that even if it were determined that the probability of the Movant-Trustee's success at trial was likely, the additional costs associated with proceeding to trial under the second prong of *Martin*, as well as the best interests of the creditors, as contemplated by the fourth prong, weigh so heavily in favor of approving the Motion to Approve Settlement, that the settlement would still be reasonable under the circumstances of the case.

fair and equitable. *Walsh v. Hefron-Tillotson, Inc. (In re Devon Capital Management, Inc.)*, 261 B.R. 619, 623 (Bankr.W.D.Pa. 2001). "Even if a settlement is fair and equitable to the parties to the settlement, approval is not appropriate if the rights of others who are not parties to the settlement will be unduly prejudiced. We must determine that 'no one has been set apart for unfair treatment'. Ignoring the effect of a settlement on rights of third parties 'contravenes a basic notion of fairness'." *Id.* (citations omitted).

Applying this standard, the Court finds as follows. Debtor avers that the within settlement should be denied as prejudicial to Debtor since it aims to settle the equitable distribution claim for $30,000.00, roughly half of the amount to which Debtor claims to be entitled. Debtor also asserts prejudice based on her averment that Mr. Urmann believes that the settlement also resolves Debtor's claim for alimony, maintenance and support.

Beginning with the latter, the Court has reviewed the proposed settlement and has determined that the settlement does not resolve the Debtor's claim for alimony, maintenance and support. Specifically, in paragraph 21 of the Motion to Approve Settlement, as well as paragraph 20 of the proposed Order of Court, Movant-Trustee clearly identified the claim being resolved as "an equitable distribution claim arising from a divorce. . .". Moreover, at the hearing, Movant-Trustee asserted on the record that nothing in the settlement limited Debtor's right to alimony or support. Thus, whether or not Mr. Urmann mistakenly believes that the settlement resolves Debtor's support claim, the Court finds that the settlement does not and the Debtor is not prejudiced.

Next, Debtor argues that the settlement should be denied as it is prejudicial to Debtor since a larger settlement or judgment would produce a surplus to the estate, and therefore, a larger payment to Debtor. Having already found that the Debtor's averment that the equitable

distribution claim is worth approximately $60,000.00 is unsubstantiated and that the settlement is reasonable, the Court also finds that there is no prejudice to Debtor. Further, the Court notes that any perceived hardship or unfairness to the Debtor due to the settlement is a direct result of the Debtor's own inaction and misconduct.

Pursuant to 11 U.S.C. §521(a)(3), a debtor has a duty to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties. . .". Such duties include the collection and reduction to money the property of Debtor's estate and to close the estate as "expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. §704(a)(1).

At the hearing, Attorney Petak credibly testified that shortly following the MOC, he, as counsel for the Movant-Trustee, requested information from Debtor's bankruptcy counsel, Attorney Herron, regarding the value of the Pension. Evidence introduced at the hearing shows that Attorney Petak contacted Debtor's bankruptcy counsel by letter as early as July 20, 2011, wherein a previous phone call occurring on June 20, 2011 was acknowledged, during which the Trustee's position that the claim to the Pension was property of the estate and the status of Debtor's interest was discussed. Additional correspondence entered as evidence also shows that Attorney Petak contacted Debtor's counsel explicitly seeking a valuation of the Pension by letters dated September 8, 2011, November 17, 2011, January 12, 2012, and July 5, 2012, as well as by email on July 28, 2011, August 8, 2011, and March 5, 2012. Despite these repeated requests, Attorney Petak was not supplied the information until October 24, 2012. In failing to provide the valuation, Debtor averred that the information was not available. However, evidence presented at the hearing shows such assertions to be false.

At the hearing, Movant-Trustee entered into evidence an email dated October 12, 2011, from Amy L. Buchanan, Esq., an attorney with the firm representing Debtor relative to her bankruptcy filing, to Attorney Petak, in which Attorney Buchanan indicates that Debtor was, at that time, unaware of the value of the Pension. However, the August 19, 2011 Letter, discussed above, from Attorney McFadden to Attorney Bitar reveals that the Debtor was not only apprised of the value of the Pension as of that date, but that Debtor had taken a position on a proposed settlement based on said value. Moreover, the time-stamp on the Pension statement ultimately provided to Attorney Petak, suggests that Debtor's divorce counsel was in possession of the statement as early as March 23, 2011. Thus, despite Debtor's assertions, the evidence presented at the hearing clearly shows that not only had Debtor been provided with the information regarding the value of the Pension prior to October 12, 2011, but that the information was readily available from Debtor's divorce counsel as early as March 23, 2011. Accordingly, the Court finds that Debtor acted in contravention with her §521(a)(3) duties and further, that due to the repeated refusal to supply the information, that the Debtor acted in bad faith.

Following receipt of the Pension valuation, Attorney Petak's administration of the equitable distribution claim was further frustrated by the conduct of Debtor. Attorney Petak contacted Attorney McFadden by letter dated October 30, 2012 requesting a status report of the equitable distribution claim to which Attorney Petak received no response. Attorney Petak renewed his request on January 21, 2013, and, in response, Attorney Petak received a fax from Attorney McFadden containing a copy of the *Complaint in Divorce* and Debtor's counterclaim.[8] Significantly, the Court notes that since the Debtor's interest in the Pension became property of the estate as of the time of filing, Debtor had no right to resolve the claim as such right was only

---

[8] Attorney McFadden testified that she was unsure of whether the Master's Memorandum and Pension statement was also included in the fax.

the Movant-Trustee's. Nonetheless, based on the testimony and evidence presented at the hearing, as well as the course of conduct taken by the Movant-Trustee, Movant-Trustee appears to have been amenable to allowing Debtor and Mr. Urmann reach a proposed settlement of the claim without Movant-Trustee's participation in negotiations. Despite the Movant-Trustee's permissive approach, at the hearing Attorney McFadden testified that no action had been taken in the divorce proceedings to resolve the equitable distribution claim. Based on this inaction, as well as the demonstrated uncooperativeness of Debtor, Movant-Trustee was forced to act. However, not even the action of the Movant-Trustee provoked a response from Debtor.

In his negotiations, Attorney Petak copied both Attorney Herron and Attorney McFadden on his correspondence to Attorney Bitar dated January 31, 2013 regarding the Movant-Trustee's intention to settle the claim. Moreover, Attorney Petak, in pursuit of resolving the claim, attended, along with Debtor, Mr. Urmann, Attorney Bitar, and Attorney McFadden, the Master's Preliminary Conference scheduled in the divorce proceeding on or about August 20, 2013. Attorney Petak credibly testified that although he notified Attorney Herron and Attorney McFadden of the Movant-Trustee's intention to settle the claim by letter and by appearance, neither Attorney Herron nor Attorney McFadden contacted Attorney Petak to inquire about the status of the settlement, or provide information regarding and/or insight into the matter which would assist Movant-Trustee in settling for a larger amount. Thus, while the Debtor's conduct prevented the Movant-Trustee from obtaining the necessary information to assess the claim for over a year, Debtor failed to take any steps during this time, beyond the August 19, 2011 Letter, to increase the likelihood of a more advantageous settlement, despite being afforded the opportunity to do so by the Movant-Trustee. Moreover, even after the Movant-Trustee obtained the valuation, and was requesting status updates regarding the resolution of the equitable

distribution claim, Debtor did nothing to move the claim forward or cooperate with the Movant-Trustee, forcing the Movant-Trustee, through Attorney Petak, to begin settlement negotiations with Mr. Urmann. Although notified of said negotiations, neither Debtor, nor Debtor's counsel, contacted Attorney Petak to offer information and/or insight regarding the matter, which would assist Movant-Trustee in seeking a larger settlement.

Through negotiations, Movant-Trustee and Mr. Urmann have agreed to a settlement of the equitable distribution claim and, in preparation thereof, Attorney Petak has drafted a QDRO for the Debtor to execute in order to permit the Movant-Trustee to seek approval of and consummate the settlement. Debtor, however, has refused to execute the QDRO, prompting Movant-Trustee to file the within Motion to Approve Settlement, to which Debtor objects for the foregoing reasons.

Despite her uncooperativeness and inaction, Debtor now attempts to have the settlement denied because the settlement is not the most advantageous result for Debtor. The Court is unswayed by Debtor's argument and finds that any outcome of the settlement unfavorable to Debtor is a direct result of Debtor's failure to cooperate with the Movant-Trustee. Further, the Court finds that the proposed settlement is fair and equitable.

## CONCLUSION

For the foregoing reasons, Movant-Trustee's *Motion for Approval of Settlement of Equitable Distribution Claim Pursuant to Federal Rule of Bankruptcy Procedure 9019 and for Authority of Chapter 7 Trustee to Execute a Qualified Domestic Relations Order to Effectuate*

17

*Settlement* is granted.[9]  An appropriate Order will be entered consistent with this Memorandum Opinion.

Dated: April 15, 2014                                       /s/Carlota M. Böhm
                                                                         Carlota M. Böhm
                                                                         United States Bankruptcy Judge

---

[9] The Court will address the Debtor's exemption claims by separate order to be issued concurrently with the within Memorandum Opinion and Order.