# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIANA M. URMANN, | ) | |
| | ) | |
| Appellant, | ) | Civil Action No. 14-718 |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES R. WALSH, TRUSTEE FOR THE | ) | Appeal Related to Bankruptcy Case No. |
| BANKRUPTCY ESTATE OF | ) | 11-21606 |
| DIANA M. URMANN, | ) | |
| | ) | |
| Appellee. | ) | |

## MEMORANDUM OPINION

**NORA BARRY FISCHER, District Judge.**

## I. INTRODUCTION

  Pending before the Court is an appeal from an April 15, 2014 Memorandum Opinion and Order and Memorandum Order of the Bankruptcy Court in Bankruptcy Case No. 11-21606. (ECF No. 1). Appellant Diana M. Urmann ("Appellant" or "Urmann"), appeals the Bankruptcy Court's decisions sustaining, in part, the objections of Trustee James R. Walsh ("Trustee" or "Walsh") to her claim of exemption for an interest in her equitable distribution claim as it related to her non-debtor spouse's Reliance Steel & Aluminum Co. Master 401(k) Plan (the "pension"), and to the settlement of the equitable distribution claim. Based on the following, the Court will affirm the decisions of the Bankruptcy Court in all respects.

## II. FACTUAL BACKGROUND

  As the Bankruptcy Court has fully set forth the factual background in its findings of fact and conclusions of law supporting its decisions (ECF Nos. 1-33, 1-37), the Court restates only the facts pertinent to the instant appeal. Appellant filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code on March 18, 2011 and Walsh was appointed interim Trustee. (ECF No. 1-33 at p. 2). Prior to this filing, Appellant's husband, John C. Urmann, Jr., filed a complaint in divorce seeking dissolution of his marriage to Appellant on June 17, 2010. (*Id.*). As part of his

1

divorce complaint, Mr. Urmann requested equitable distribution of their marital property. (*Id.*). At the time of the filing of the divorce complaint, the marital property included Mr. Urmann's pension worth approximately $106,224.26. (*Id.*). On January 21, 2011, Appellant filed her counterclaim to the divorce complaint, and asserted a claim for alimony, alimony pendent lite, and/or spousal support. (*Id.*). It is undisputed that at the time Appellant filed her bankruptcy petition, no final state court order had been entered related to any of the matters raised in the complaint and counterclaim in the divorce action.

Appellant represented on her Schedule B that she did not have an interest in any annuities, IRA, ERISA, or other pension plans; alimony, maintenance, support and property settlements; contingent and unliquidated claims; and/or any other kind of personal property not already listed in her schedules. (*Id.*). Appellant did not claim any exemptions for such property on Schedule C. (*Id.*). On her Statement of Financial Affairs, Plaintiff stated that she was not a party to any lawsuit filed within one year prior to filing of the bankruptcy proceeding. (*Id.* at pp. 2-3).

The Trustee subsequently convened a section 341 Meeting of Creditors ("MOC") on April 18, 2011. (*Id.* at p. 3). Upon questioning by the Trustee, Appellant disclosed her existing divorce proceedings, and her claims for equitable distribution and support. (*Id.*). Thereafter, on April 25, 2011, Appellant amended her Schedules B and C, and included and exempted a one-third interest in a life insurance policy valued at $2,058.87. (*Id.*). She did not, however, include her equitable distribution claim and/or spousal support claim. (*Id.*).

Shortly after the MOC, the Trustee, and/or Kevin J. Petak, Esquire, ("Petak"), counsel for the Trustee, repeatedly requested information from Appellant's bankruptcy counsel, Matthew M. Herron, Esquire ("Herron"), and/or Stephanie Jones McFadden, Esquire ("McFadden"), Appellant's divorce counsel, regarding the value of the pension. (*Id.* at p. 14). In failing to supply the information, Appellant averred that the information was not available. (*Id.*). During the evidentiary hearing before the Bankruptcy Court, however, correspondence entered into evidence revealed that Appellant had been provided information regarding the value of the pension prior to October 12, 2011, and the information was readily available to her as early as

2

March 23, 2011. (*Id.* at p. 15). Despite repeated inquiries, this information was not supplied to the Trustee until October 24, 2012. (*Id.* at p. 14). According to correspondence introduced at the Bankruptcy hearing, the value of one-half of the pension at the time of separation was $53,112.13, and Appellant was of the view that her equitable distribution claim was worth approximately $60,000.00. (*Id.* at pp. 8-9).

Thereafter, Petak contacted McFadden on October 30, 2012 and January 21, 2013, requesting a status report regarding the equitable distribution claim. (*Id.* at p. 15). Due to Appellant's inaction in resolving the equitable distribution claim in divorce court, Petak took steps to negotiate a settlement with Mr. Urmann's counsel directly, informing all counsel of his intent by copy of his correspondence. (*Id.* at p. 16). Petak, along with Appellant, McFadden, Mr. Urmann, and Mr. Urmann's attorney, attended the Master's Preliminary Conference scheduled in the divorce proceedings on August 20, 2013. (*Id.*). The equitable distribution claim was subsequently settled for $30,000.00. (*Id.* at p. 3). Petak drafted a qualified domestic relations order ("QDRO") for Appellant's signature in order to execute the settlement, but Appellant refused to sign the document. (*Id.* at p. 17).

In light of Appellant's refusal, on November 4, 2013, the Trustee filed a Motion to Approve Settlement seeking to settle the equitable distribution claim for $30,000.00. (*Id.* at p. 3). Shortly thereafter, on November 18, 2013, Appellant filed a second amendment to Schedules B and C and listed, for the first time, her interest in the pension of Mr. Urmann valued at $60,000.00, as well as an interest in alimony, maintenance and support for an undetermined amount. (*Id.*). Appellant also filed Objections to the Motion to Approve Settlement on November 21, 2013, wherein she argued that she did not possess a "claim" relative to her interest in the pension, that said interest was not property of the bankruptcy estate under 11 U.S.C. § 541(c)(2), and if it was considered property of the estate, it would be exemptable. (*Id.*). The Trustee filed Objections to Appellant's Amended Exemptions on December 13, 2013, and argued that Appellant did not have an interest in the pension but merely a claim for equitable distribution. (*Id.* at pp. 3-4).

3

An evidentiary hearing was held before the Bankruptcy Court on January 21, 2014 on both the Motion to Approve Settlement and the Objection to the Amended Exemptions. (*Id.* at p. 4). With respect to the Motion to Approve Settlement, Appellant claimed that her interest in the pension was excluded from property of the bankruptcy estate under 11 U.S.C. § 541(c)(2) and alternatively, even if it was property of the estate, the settlement should not be approved since a greater recovery was possible and the settlement was prejudicial to her. (*Id.* at p. 4). With respect to the Trustee's Objections, Appellant argued that if the interest in the pension was considered to be property of the estate, then it was exemptable in full under 11 U.S.C. §§ 522(b)(3)(C), (d)(10)(E), and/or (d)(12) and/or, in part, pursuant to (d)(5). (*Id.* at p. 4 n.3). At the conclusion of the hearing, supplemental briefs were filed by the parties. (*Id.* at p. 4).

On April 15, 2014, the Bankruptcy Court issued a Memorandum Opinion granting the Trustee's Motion to Approve Settlement. (ECF No. 1-33). The Bankruptcy Court also issued a Memorandum Order sustaining in part and overruling in part the Trustee's Objections to the Amended Exemptions. (ECF No. 1-37). Pertinent to this appeal, the Bankruptcy Court sustained the Trustee's objections to Appellant's claim of exemptions with respect to the equitable distribution claim pursuant to 11 U.S.C. §§ 522(b)(3)(C), (d)(10)(E), and (d)(12). (*Id.*). The instant appeal ensued.

### III. LEGAL STANDARD

This court has appellate jurisdiction over final judgments, orders and decrees of a bankruptcy court pursuant to 28 U.S.C. § 158(a)(1). The court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law under a *de novo* standard. *In re SubMicron Sys. Corp.*, 432 F.3d 448, 454 (3d Cir. 2006).

### IV. DISCUSSION

Appellant raises three arguments on appeal. Appellant first argues that the Bankruptcy Court erred in rejecting her claimed exemptions relating to her interest in Mr. Urmann's pension. Appellant further argues that the Bankruptcy Court erred in approving the settlement of the equitable distribution claim between the Trustee and Mr. Urmann. Finally, Appellant contends

that the Bankruptcy Court erred in ordering that the Trustee be named as the direct payee in the QDRO.

C*laimed exemptions*

Pursuant to the Bankruptcy Code, debtors may exempt some types of property from the bankruptcy estate. *See* 11 U.S.C. § 522. A debtor may exempt "retirement funds" if they are in an "account that is exempt from taxation" under certain enumerated provisions of the Internal Revenue Code. *See* 11 U.S.C. §§ 522(b)(3)(C) and (d)(12). The exemption available pursuant to § 522(d)(10)(E) allows a debtor to exempt funds under a pension plan "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." *See* 11 U.S.C. § 522(d)(10)(E).

Appellant claimed that her interest in Mr. Urmann's pension was exempt from the bankruptcy proceedings pursuant these provisions. The Trustee challenged the claimed exemptions on the grounds that Appellant did not have an interest in Mr. Urmann's pension at the time of the bankruptcy filing, but only had an interest in a claim for equitable distribution. The Bankruptcy Court agreed, noting that at the time Appellant filed her bankruptcy case, the claim for equitable distribution in the divorce case remained unresolved. (ECF No. 1-33 at p. 5). The Bankruptcy Court reasoned:

> In a case strikingly similar to the within matter, the Court in *Walsh v. Burgeson (In re Burgeson)*, 504 B.R. 800 (Bankr.W.D.Pa.2014), recently examined whether a debtor's interest in an estranged spouse's qualified pension plan is excluded from property of the estate under § 541(c)(2). Said analysis is hereby adopted and incorporated within. The Court in *In re Burgeson* held that where a debtor possesses a claim for equitable distribution at the time of filing, but no Qualified Domestic Relations Order ("QDRO") or divorce decree delineating the debtor's ownership interest in the pension plan was obtained prior to the filing of the bankruptcy petition, and the debtor was neither a participant nor named beneficiary under the pension plan, the debtor had no beneficiary interest in the pension but instead, possessed an interest in a claim for equitable distribution. *In re Burgeson*, 504 B.R. at 805. As such, the debtor's interest in the pension could not be excluded from the estate pursuant to ERISA and the interest was property of the estate. *Id.*

5

> In the within matter, it is undisputed, and this Court finds, that at the time of filing, Debtor had not obtained a QDRO or similar order granting Debtor an ownership interest in the Pension. Likewise, Debtor has failed to present any evidence demonstrating that Debtor was a participant or named beneficiary of the Pension as described in *Burgeson*. Consequently, this Court finds that Debtor did not have a beneficiary interest in the Pension at the time of filing and that any interest Debtor did possess in the Pension, through her equitable distribution claim, is property of the estate.

(ECF No. 1-33 at p. 6). The Bankruptcy Court concluded that because Appellant's interest in the equitable distribution claim did not qualify as an interest in retirement or pension funds, the Trustee had satisfied his ultimate burden of persuasion of demonstrating that Appellant's interest in the claim for equitable distribution was not exemptable under 11 U.S.C. §§ 522(b)(3)(C), (d)(10)(E), and/or (d)(12). (ECF No. 1-37 at No. 4).

In this appeal, Appellant argues that the Bankruptcy Court erred in sustaining the Trustee's objections to her claimed exemptions. Substantially similar arguments were addressed and specifically rejected by the court in *Walsh v. Burgeson (In re Burgeson)*, 504 B.R. 800, 805 (Bankr. W.D. Pa. 2014), upon which the Bankruptcy Court relied. Accordingly, a discussion of *Burgeson* is in order. In *Burgeson*, the debtor, like the Appellant here, argued that her potential interest in her husband's pension plan in a pending divorce action was not property of the estate, and in the event that it was, her interest was entitled to exemption pursuant to 11 U.S.C. § 522(b)(4)(A). *Burgeson*, 504 B.R. at 803. At the time debtor filed for bankruptcy, her claim for equitable distribution had not yet been adjudicated and no divorce decree had been entered. *Id.* at 802. In sustaining the Trustee's objections to the debtor's claimed exemption, the court stated:

> In the instant case, the Debtor filed her bankruptcy petition before obtaining a QDRO or divorce decree. Although she subsequently has obtained a QDRO, property of a bankruptcy estate is determined as of the date the bankruptcy petition is filed. 11 U.S.C. §§ 522, 541(a)(1). Because no QDRO existed as of the Petition Date, and the Debtor was not a participant nor named as a beneficiary of the Pension, the Debtor had no beneficiary interest in the Pension as of the Petition Date; rather, at the time of filing the bankruptcy petition, the Debtor had an interest in a claim for equitable distribution. Thus, the Court finds that the Debtor's interest in the Pension cannot be excluded from the estate pursuant to ERISA's anti-alienation provisions.

> . . .
>
> Furthermore, under Pennsylvania state law, the Debtor's interest in the equitable distribution claim must be included in the estate. "State law determines the nature of property rights when considering whether something constitutes bankruptcy estate property under § 541(a)." *In re Radinick*, 419 B.R. 291, 294 (Bankr.W.D.Pa. 2009), (citing *In re Frederes*, 141 B.R. 289, 291 (Bankr.W.D.N.Y. 1992)); *see also Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). In Pennsylvania, "a marital interest in property (i.e., a right to equitable distribution) vests immediately upon the initiation of a divorce action coupled with the request for equitable distribution of marital assets." *In re Radinick*, 419 B.R. 291, 295 (Bankr.W.D.Pa. 2009) (citing *In re Bennett*, 175 B.R. 181, 185 & 186 nn. 5, 6 (Bankr.E.D.Pa. 1994); *In re Polliard*, 152 B.R. 51, 53 (Bankr.W.D.Pa. 1993)). Such marital interest constitutes a property interest in marital assets. *Radinick*, 419 B.R. at 295 (citing *Bennett*, 175 B.R. at 184; *In re Scholl*, 234 B.R. 636, 641 (Bankr.E.D.Pa. 1999)). Thus:
>
>> if a debtor, prior to filing a bankruptcy petition, files for divorce in Pennsylvania and also requests equitable distribution, such debtor will, as of the date of such bankruptcy petition filing, possess a marital interest in property, which marital interest (a) itself constitutes a legal and/or equitable interest of the debtor in property as of the commencement of the case, regardless of when such debtor becomes divorced, ... and (b) will thus constitute bankruptcy estate property regardless of when such debtor becomes divorced.
>
> *Radinick*, 419 B.R. at 295 (citing *Bennett*, 175 B.R. at 182, 184; *Scholl*, 234 B.R. at 638, 641; 11 U.S.C.A. § 541(a)(1)).
>
> Under Pennsylvania law, the Debtor had a right to equitable distribution at the time she filed the Divorce Complaint and as of the Petition Date; as such, said interest is hereby deemed to be property of her bankruptcy estate.

*Burgeson*, 504 B.R. at 805-06. The court went on to reject the debtor's argument that her interest in the pension should be exempted from her estate, reasoning:

> However, as noted *supra*, "in Pennsylvania a marital interest in property (i.e., a right to equitable distribution) vests immediately upon the initiation of a divorce action coupled with the request for equitable distribution of marital assets." *Radinick*, 419 B.R. at 295 (citing *Bennett*, 175 B.R. at 186 nn. 5, 6; *Polliard*, 152 B.R. at 53). The interest that vested in the Debtor upon the filing of

7

> the Divorce Complaint was a right to equitable distribution. Such a right did not automatically confer upon the Debtor any beneficiary status. Because ERISA has anti-alienation provisions, and because ex-spouse's do not have rights unless and until a QDRO provides them with such, even though Debtor had a right to equitable distribution as of the Petition Date, she could not be a beneficiary of the Pension until a QDRO was entered, which was after the Petition Date.

*Burgeson*, 504 B.R. at 807.

In light of *Burgeson*, as well as the case law cited therein, and for the reasons stated by the Bankruptcy Court, Appellant does not qualify for the claimed exemptions. Accordingly, the Court finds that the Bankruptcy Court did not err in sustaining the Trustee's objections with respect to the claimed exemptions.

***Approval of Settlement***

Appellant further argues that the Bankruptcy Court erred in approving the settlement of her equitable distribution claim as it related to her interest in Mr. Urmann's pension "for half of the amount" to which she was entitled. (ECF No. 3 at p. 16). Pursuant to Bankruptcy Rule 9019(a), courts may approve settlements if they find that the compromise is "fair and equitable." *Crawford v. Zambrano* (*In re Zambrano Corp.*), 2014 WL 585305 at *3 (Bankr. W.D. Pa. 2014). Compromises are favored in bankruptcy proceedings since they minimize litigation and expedite the administration of the bankruptcy estate. *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 *Collier on Bankruptcy* ¶ 9019.03[1] (15th ed. 1993)). Determinations with respect to settlements are reviewed under the abuse of discretion standard. *Id.* "An abuse of discretion involves 'a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact.'" *Valenti v. Mitchell*, 962 F.3d 288, 299 (3d Cir. 1992) (quoting *International Union, UAW v. Mack Trucks, Inc.*, 820 F.2d 91, 95 (3d Cir. 1987)). In exercising its discretion in determining whether to approve a settlement, the Bankruptcy Court considers four general factors: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. *Martin*, 91 F.3d at 393.

Here, the Bankruptcy Court considered the relevant factors in determining whether the settlement was fair and equitable.  As to the first factor, the probability of success in litigation, the Bankruptcy Court found that the value of the pension at the time of separation was $106,224.26, an amount not disputed by Appellant in this appeal. (ECF No. 1-33 at p. 9).[1]  The Bankruptcy Court found it unlikely that Appellant would be successful in obtaining an award of $60,000.00, an amount greater than the value of one-half of the pension.  (*Id.*).  The Court further found that Appellant's success in receiving even one-half the value was tentative.  (*Id.*).  The Bankruptcy Court supported these findings by pointing to Attorney McFadden's testimony at the hearing, wherein she testified that a division of assets was not necessarily equal and that other considerations were examined in determining the division.  (*Id.*).  Based on this testimony, the Bankruptcy Court concluded that whether the Trustee would be successful in receiving one-half of the value of the pension at trial would be within the full discretion of the state court hearing the claim and subject to that court's determination.  (*Id.*)  As such, the Bankruptcy Court concluded that the uncertainty of the litigation weighed in favor of approving the settlement. (*Id.*).

The Court agrees with the Bankruptcy Court's conclusion and finds that it did not abuse its discretion in concluding that the probability of success in obtaining more than one-half of the pension was low.  Moreover, the Court rejects Appellant's contention that the Bankruptcy Court should have considered the factors enumerated in 23 Pa.C.S.A. § 3502(a) in evaluating the probability of success prong.  This section contains eleven statutory factors a state court considers in determining the equitable division of marital property in divorce proceedings.  The Bankruptcy Court, however, is not to "decide the numerous questions of law and fact raised ... but rather to canvass the issues to see whether the settlement fall[s] below the lowest point in the range of reasonableness." *In re Neshaminy Office Bldg. Associates*, 62 B.R. 798, 803 (E.D.Pa. 1986) (citing *In re Carla Leather*, 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984)).  The Court therefore finds no error in this regard.

---

[1] As the Bankruptcy Court observed, the Trustee did not argue that if he were to proceed to trial on the equitable distribution claim he would be unsuccessful in receiving an award at all; rather, the probability of success factor related to the amount that would be awarded.  (ECF No. 1-33 at p. 8).

9

The Bankruptcy Court next examined the third prong of the *Martin* factors, finding it was closely related to the first prong, and concluded that the inconvenience of litigation, including the additional cost and delay, would ultimately net no additional benefit. (*Id.* at pp. 9-10). The Bankruptcy Court credited Attorney Petak's testimony that the costs of litigation would exceed any additional benefit that would be gained from further litigation. (*Id.* at p. 10). Attorney Petak testified that in order to proceed with the litigation, the bankruptcy estate would need to engage an expert witness, and would also incur attorney's fees in the approximate amount of $20,000.00 to $25,000.00, effectively negating any anticipated additional recovery that the Trustee would receive even if awarded the full one-half value of the pension. (*Id.* at p. 10). The Bankruptcy Court specifically assigned little weight to Attorney McFadden's testimony that the resolution of the equitable distribution claim would cost approximately $2,000.00, based on her unfamiliarity with the proposed settlement, as well as her lack of involvement in the negotiations. (*Id.* at p. 10). The Bankruptcy Court further found that even if Attorney McFadden's estimation was reliable, the estate was without sufficient funds to retain Attorney McFadden, or any other divorce counsel. (*Id.* at p. 11).

Appellant argues that the Bankruptcy Court "simply relied upon the testimony of Attorney Petak" in evaluating this prong. (ECF No. 3 at p. 18). As this Court recently stated, however, "[a]s the trier of fact, the Bankruptcy Court was in a better position to evaluate the credibility of the witnesses than is this Court." *Corso v. Walker*, 449 B.R. 838, 843 (W.D.Pa. 2011) (citing *In re Myers*, 491 F.3d 120, 126 (3d Cir. 2007) ("The Bankruptcy Court is best positioned to assess the facts, particularly those related to credibility ...")). Accordingly, this Court defers to the Bankruptcy Court's factual findings, which are not clearly erroneous and are supported by the record.

With regard to the second factor, the likely difficulties in collection, the Bankruptcy Court made the following findings:

> … The Court notes that with the QDRO in place, the plan administrator of the Pension would make a distribution directly to Movant-Trustee upon the liquidation date, estimated at trial to occur in roughly six years, whereas absent the QDRO the Movant-Trustee would be dependent on Mr. Urmann's voluntary

>turnover of the settlement proceeds received by Mr. Urmann via distributions
>and/or withdrawals from the Pension upon reaching a certain age. The Court
>recognizes that direct payment from Mr. Urmann's plan administrator minimizes
>the risk of Mr. Urmann's failure to cooperate in the future and/or the necessity of
>litigation to compel payment(s) to the Movant-Trustee. Moreover, in the event
>that the equitable distribution claim is paid to the Debtor, the Movant-Trustee
>would similarly be forced to rely on Debtor's voluntary turnover of the equitable
>distribution claim's proceeds. As Debtor has been wholly uncooperative with the
>Movant-Trustee, as well as his counsel, since Debtor's divulgence of the existing
>equitable distribution claim at the MOC, the Court finds that the Movant-Trustee
>would have a greater chance of collection of the estate assets with a QDRO
>directly payable to Movant-Trustee in place as contemplated by the proposed
>settlement.

(ECF No. 1-33 at p. 11).

Appellant argues that the Bankruptcy Court abused its discretion in approving the settlement with the Trustee being named as the direct payee under a QDRO. (ECF No. 3 at p. 22). Appellant contends that pursuant to ERISA, only a spouse, former spouse, child or other dependent of a plan participant can be named as an alternate payee. *See* 29 U.S.C. § 1056(d)(3)(K). Conversely, the Trustee maintains that under 11 U.S.C. § 541, he necessarily "steps into the shoes" of the debtor as it relates to any and all interest that the debtor possessed as of the bankruptcy filing, including the debtor's claim for equitable distribution, and can therefore appropriately be designated as an alternate payee. (ECF No. 5 at p. 22). The Court is of the view that the Trustee has the better side of the argument.

Pursuant to § 541, the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement" of the bankruptcy. 11 U.S.C. § 541(a); *see also O'Dowd v. Trueger*, 233 F.3d 197, 202 (3d Cir. 2000). These legal and equitable interests include causes of action. 3 *Collier on Bankruptcy* ¶ 323.02[1] (15th rev. ed. 2001); *accord O'Dowd*, 233 F.3d at 202-03. A Chapter 7 trustee is charged with the duty to "collect and reduce to money the property of the estate for which such trustee serves and close such estate as expeditiously as is compatible with the best interests of parties in interest…." 11 U.S.C. § 704(a)(1); *Martin*, 91 F.3d at 394. "[I]n actions brought by the trustee as successor to the debtor's interest under section 541, the 'trustee stands in the shoes of the debtor and can only

11

assert those causes of action possessed by the debtor.' [Conversely], [t]he trustee is, of course, subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor.'" *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 356 (3d Cir. 2001) (quoting *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1154 (3d Cir. 1989)). The Trustee here stepped into the shoes of the Appellant in settling the equitable distribution claim. Faced with an estranged spouse and a consistently uncooperative debtor who failed and refused to execute the necessary documents (findings the Appellant does not dispute), the Bankruptcy Court appropriately exercised its discretion in finding that the Trustee would have a greater chance of collection of the estate assets if the Trustee was named as a direct payee in the QDRO. (ECF No. 1-33 at p. 11). To find otherwise would result in an additional litigation burden on the Trustee to collect the pension, running counter to the Trustee's duty to fulfill his statutory duties expeditiously. Accordingly, the Court finds no abuse of discretion with respect to this *Martin* factor.[2]

Appellant does not dispute the Bankruptcy Court's finding that the proposed settlement was in the best interest of the creditors. Accordingly, the Court need not address this prong.

Finally, as the Appellant points out, in addition to the *Martin* factors, the Bankruptcy Court must consider whether the proposed settlement is fair and equitable. *Walsh v. Hefron-Tillotson, Inc.* (*In re Devon Capitol Management, Inc.*), 261 B.R. 619, 623 (Bankr. W.D.Pa. 2001). "Even if a settlement is fair and equitable to the parties to the settlement, approval is not appropriate if the rights of others who are not parties to the settlement will be unduly prejudiced. We must determine that 'no one has been set apart for unfair treatment'. Ignoring the effect of a settlement on rights of third parties 'contravenes a basic notion of fairness'." *Id.* (citations omitted).

Here, the essence of the Appellant's challenge is that the settlement was prejudicial to her since a larger settlement amount would have produced a surplus to the estate and yielded a larger

---

[2] Appellant further argues that the Bankruptcy Court exceeded its jurisdiction because only a state court can "issue" a QDRO. (ECF No. 3 at pp. 23-24). The Bankruptcy Court did not, however, issue a QDRO; rather, it simply ordered that the Plan Administrator accept the Trustee's execution of any and all documents to effectuate a withdrawal of the pension funds as an alternate payee. (ECF No. 35 at p. 2).

payment to her. (ECF No. 3 at p. 20). The Bankruptcy Court, however, specifically rejected this argument, observing that Appellant's contention that the equitable distribution claim was worth approximately $60,000.00 was unsubstantiated. (ECF No. 1-33 at pp. 13-14). Moreover, the Bankruptcy Court further found that any perceived hardship or unfairness to the Appellant was a direct result of her own inaction and misconduct, which the Bankruptcy Court thoroughly chronicled based on the evidence revealed at the hearing, conduct which the Appellant has not factually challenged on appeal. (*Id.* at pp. 14-17.). Considering the Bankruptcy Court's findings in light of the evidence produced at the hearing, this Court finds no basis to conclude that the Bankruptcy Court erred in approving the settlement.

## VI. CONCLUSION

Based on the foregoing, the Appellant's appeal is DENIED and the April 15, 2014 Memorandum Opinion, Order, and Memorandum Order are AFFIRMED. An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

October 24, 2014

cc/ecf: All counsel of record.

    The Hon. Carlota M. Bohm, U.S. Bankruptcy Judge